UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JOHN NELSON,<br><br>  Plaintiff,<br><br>v.<br><br>WILDERNESS HUNTING LODGE, LLC,<br><br>  Defendant. | Case No. 2:16-cv-00021<br><br>Magistrate Judge Newbern |

## MEMORANDUM AND ORDER

On March 23, 2015, Plaintiff John Nelson was involved in an accident while hunting at Defendant Wilderness Hunting Lodge (Wilderness) in Monterey, Tennessee. Nelson was injured when a utility task vehicle (UTV) driven by a Wilderness employee and in which Nelson was a passenger suddenly lurched forward and hit a tree. Nelson claims that the accident resulted from the driver's negligence. Wilderness states that Nelson caused the accident by placing his foot on the driver's foot, causing the UTV to accelerate and the driver to lose control.

Pending before the Court is a Motion for Summary Judgment filed by Wilderness (Doc. No. 34), to which Nelson has responded (Doc. No. 50), and Wilderness has filed a reply (Doc. No. 53). For the reasons stated herein, the Motion for Summary Judgment is DENIED.

### I. Statement of the Case

**A.  Factual Background**

On May 23, 2015, Nelson was hunting boar on the property of Wilderness Hunting Lodge in Monterey, Tennessee. (Doc. No. 10, PageID# 26–27, ¶ 5; Doc. No. 36, PageID# 101, ¶ 1; Doc. No. 36-2, PageID# 123; Doc. No. 51, PageID# 198, ¶ 1.) After a morning outing, Nelson and

another guest, Kevin Lixfield, got into a UTV driven by Wilderness employee Cory Looper to be driven back to the lodge. (Doc. No. 10, PageID# 26–27, ¶¶ 5–6; Doc. No. 36, PageID# 101–02, ¶¶ 2–3; Doc. No. 36-1, PageID# 109; Doc. No. 36-2, PageID# 124; Doc. No. 36-3, PageID# 128–29; Doc. No. 51, PageID# 198–99, ¶¶ 2–3.) Nelson sat in the middle of the UTV's front seat, with Lixfield on the passenger side and Looper in the driver's seat. (Doc. No. 36-1, PageID# 109; Doc. No. 36-2, PageID# 124.) After Looper got into the UTV and started the motor, the vehicle suddenly lurched forward and struck a tree. (Doc. No. 36, PageID# 104, ¶ 11; Doc. No. 36-1, PageID# 111–12, 115; Doc. No. 36-2, PageID# 124–25; Doc. No. 51, PageID# 202, ¶ 11.) Nelson claims that his arm was severely injured in the accident. (Doc. No. 10, PageID# 28–29, ¶¶ 13–16.)

What happened immediately before collision to cause the accident is a matter of dispute. Nelson testified that, after getting into the UTV, he put his left leg on top of the "hump" between the driver's side and passenger's side of the vehicle and his right leg on the passenger's side floor. (Doc. No. 36-1, PageID# 109–11.) Looper and Lixfield entered the vehicle on either side of Nelson. (*Id.* at PageID# 111–12.) The next thing Nelson knew, he was "[i]nto the dash" of the vehicle and in pain. (*Id.* at PageID# 112–13.) Nelson testified that he does not know what happened between the time Looper entered the vehicle and the accident. (*Id.*) In deposition testimony, Nelson stated, "I can't tell you that he grabbed the steering wheel. I can't tell you he moved his butt. All that I know is I was sitting there like that, and the next thing I knew, I was in pain." (*Id.*) Nelson testified that he could hear talking but did not know what was being said because he was in so much pain. (*Id.* at PageID# 114.) He stated, "All that I . . . can remember is the pain, and I thought I lost my arm." (*Id.*)

Nelson also testified that, to his knowledge, he did not cause his foot to hit Looper's foot or leg, or do anything from the middle seat to cause the accident. (*Id.* at PageID# 119.) He stated

that he knows this "[b]ecause [his] foot was up here on that rise and [his] other foot was down on the passenger side" and he "would have no reason to take [his] left foot and push on the gas pedal" because he was not driving. (*Id.* at PageID# 121.) Asked whether he knew if Looper was reckless in handling the vehicle, Nelson testified that he thought, earlier in the day, "for the conditions, . . . [Looper] was going just a little too fast." (*Id.* at PageID# 116.) Nelson did not have any memory of whether Looper drove recklessly coming down the mountain after the accident. (*Id.* at PageID# 116–17.)

Looper testified that the accident happened because Nelson put his foot on Looper's foot, which was on the accelerator. (Doc. No. 51-1, PageID# 208.) Looper testified that Nelson's foot pinned his foot down. (*Id.*) Looper couldn't bend his foot back up and struggled to control the vehicle. (*Id.*) He testified he was pushing Nelson with his elbow, saying "Get off of me, man, get off of me." (*Id.*) Looper believed Nelson "was having a heart attack or something." (*Id.*) Looper stated "it was just like [Nelson] tromped [Looper's] foot and braced his whole body against [Looper's] foot." (*Id.* at PageID# 210–11.) Looper testified that he did not let go of the steering wheel, stating "there's no way I was letting go of that wheel . . . [b]ecause there could have been worse happened than what did if I had let go of the wheel." (*Id*. at PageID# 209.)

Looper stated that Lixfield told him, after the accident, that Lixfield "didn't see what happened" but said that Looper's explanation about Nelson's foot "made sense. He said . . . I wondered why you just hit that tree for no reason." (*Id.* at PageID# 210.)

Looper also testified that his employer originally "believed that [Looper] . . . driving too fast is what caused the accident." (*Id.* at PageID# 218.) Looper stated that he initially told his employer that "Nelson pushed the pedal on his own, and [Looper] couldn't get [Nelson's] foot off of it" because Looper "didn't think [his employer] would believe that [Looper] couldn't get that

old man's foot off [his own]." (*Id.* at PageID# 218.) Looper admitted that story was not true and that Nelson's foot had pushed Looper's own foot on the accelerator. (*Id.*) Looper stated that he told his employer the truth after the lawsuit was filed. (*Id.*)

Lixfield, in turn, testified that, as the UTV lurched forward, he "could see [Looper] struggling with [Nelson's] leg trying to get his foot off the guides [sic] foot. [Nelson's] foot was on top of the driver's foot." (Doc. No. 36-2, PageID# 124.) Lixfield stated that he thought Nelson "had been fidgeting in his seat trying to adjust his comfort level or what have you in his seat and he had actually stood up on the driver's foot." (*Id.*) Contradicting Looper, Lixfield stated that he saw Looper's "right hand . . . groping at [Nelson's] leg or pulling at it. It was some sort of motion with his right hand towards the left leg of Mr. Nelson." (*Id.* at PageID# 126.)

**B.** **Procedural History**

Nelson's amended complaint brings one claim of negligence under Tennessee law against Wilderness. (Doc. No. 10.) Specifically, Nelson alleges that Wilderness's employee or agent: (1) "[f]ailed to keep a proper lookout while operating the [UTV] under the conditions then and there existing," (2) "[o]perated the . . . vehicle in a negligent manner by failing to keep the vehicle from striking the tree," (3) "[o]perated the . . . vehicle in a negligent manner under the conditions then and there existing," and (4) "[s]aw or should have seen that an accident would result and failed to make all reasonable efforts and precautions to avoid the collision." (Doc. No. 10, PageID# 28, ¶ 11.) Nelson further alleges that the acts of Wilderness's employee or agent "constitute the sole and proximate cause of this incident and the resulting damages to the Plaintiff." (*Id.* at ¶ 12.)

Wilderness filed a motion for summary judgment (Doc. No. 34), accompanied by a Memorandum of Law (Doc. No. 35), a Statement of Undisputed Material Facts (Doc. No. 36), and excerpts from the deposition testimony of Nelson, Lixfield, and Looper (Doc. Nos. 36-1, 36-2, 36-

3). Wilderness argues that Nelson's negligence claim must fail because he "cannot prove a breach of a standard of care and/or causation." (Doc. No. 35, PageID# 93.) Specifically, Wilderness argues that Nelson cannot produce evidence sufficient to establish that Wilderness or its agent acted negligently because Nelson "does not know what happened between the time the driver of the UTV entered the vehicle and the time after the collision" and therefore "cannot testify that Mr. Looper did anything wrong prior to the collision." (*Id.*)

Nelson filed a response in opposition to Wilderness's motion (Doc. No. 50), accompanied by a Memorandum of Law (Doc. No. 52), Response to Wilderness's Statement of Material Facts (Doc. No. 51), and excerpts from Looper's deposition testimony (Doc. No. 51-1).[1] In response, Nelson argues that there is a dispute of fact "as to whether or not John Nelson caused or contributed to the loss of control of the vehicle" because "driver Cory Looper and Plaintiff John Nelson offer contradictory testimony, and passenger Kevin Lixfield has also made conflicting statements at various times as to what happened in the vehicle." (Doc. No. 52, PageID# 222.) Nelson further argues that the doctrine of res ipsa loquitur applies to his claim and supports a finding of negligence by circumstantial evidence. (*Id.* at PageID# 223–26.)

In its reply, Wilderness argues that res ipsa loquitur cannot be applied in Nelson's case because of the "indisputable proof of [Nelson's] own conduct." (Doc. No. 53, PageID# 233.) Wilderness further argues that there are no genuine issues of material fact to be considered by a

---

[1] Wilderness correctly notes in its reply that Nelson's opposition was filed four days after the deadline set by the Amended Case Management Order (Doc. No. 27). (Doc. No. 53, PageID# 227 n.1.) Nelson did not move for an extension of time in which to file, and failure to file a timely response may be found to indicate no opposition to a motion under this Court's Local Rule 7.01(b). In this instance, the Court will consider Nelson's late-filed response so as to resolve Wilderness's motion on its merits.

jury because "it is indisputable that [Nelson's] foot pressed on top of Mr. Looper's foot, thereby pressing the accelerator pedal of the UTV and causing the collision." (*Id*. at PageID# 234.)

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party identifies an absence of a genuine issue of material fact, the burden shifts to the non-moving party to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The Court must not attempt "to weigh the evidence and determine the truth of the matter"; rather, its task is to "determine whether there is a genuine issue for trial." *Moldowan*, 578 F.3d at 374 (quoting *Anderson*, 477 U.S. at 249). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Summary judgment may not be granted, however, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Brown v. Lewis*, 779 F.3d 401, 410 (6th Cir. 2015).

## III. Analysis

To succeed on his claim of negligence under Tennessee law, Nelson must prove: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and

(5) proximate, or legal cause." *Kellner v. Budget Car & Truck Rental, Inc.*, 359 F.3d 399, 403 (6th Cir. 2004) (quoting *Bennett v. Putnam Cty.*, 47 S.W.3d 438, 443 (Tenn. Ct. App. 2000)). Wilderness does not dispute in its motion that it owed a duty of care to Nelson or that Nelson suffered an injury as the result of the accident.[2] Instead, it argues that Nelson cannot establish a breach of that duty or that any negligence on Looper's part caused Nelson's injury because "Plaintiff simply does not know how the actual accident happened, and he cannot testify that Mr. Looper did anything wrong prior to the collision." (Doc. No. 35, PageID# 93.) Nelson, in turn, contends that "the record clearly shows that Defendant's agent, Corey Looper, was the driver of the vehicle in question; that Mr. Looper was in control of the vehicle; and that the vehicle hit a tree," which constitutes "ample circumstantial evidence of the negligence of Defendant's agent" under the doctrine of res ipsa loquitur. (Doc. No. 52, PageID# 223.)

"Persons asserting a common-law negligence claim must prove all the elements of their case using either direct evidence, circumstantial evidence, or a combination of the two." *Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 523 (Tenn. Ct. App. 2002). While plaintiffs generally produce direct evidence of a defendant's negligent conduct, "[c]ases that fit within the res ipsa loquitur doctrine are exceptions to this general rule." *Id*. Res ipsa loquitur is a rule of evidence "intended to come to the aid of plaintiffs who have no direct evidence of a defendant's negligence . . . by providing a specialized vehicle for considering circumstantial evidence in negligence cases." *Id*. at 525. "Plaintiffs relying on res ipsa loquitur need not prove specific acts of negligence by the defendant to get their case to the jury." *Id*. at 523. Instead, "[t]he doctrine allows for 'an inference of negligence where the jury has a common knowledge or understanding that events which resulted in the plaintiff's injury do not ordinarily occur unless someone was negligent.'" *Morris v. Wal-*

---

[2] Wilderness also does not dispute that Looper acted as its agent or employee.

*Mart Stores, Inc.*, 330 F.3d 854, 859 (6th Cir. 2003) (quoting *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999)). To invoke the doctrine, a plaintiff must establish: (1) how the injury occurred, (2) that the event causing the injury "is of a kind which does not ordinarily occur in the absence of negligence," and (3) that the plaintiff was injured "by an instrumentality that was within the defendant's exclusive control." *Burton*, 129 S.W.3d. at 524. "The weight of any inference to be drawn from the evidence is for the determination of the jury." *Morris*, 330 F.3d at 859 (quoting *Seavers*, 9 S.W.3d at 91)).

Wilderness argues that Nelson cannot invoke res ipsa loquitur because he has not introduced evidence sufficient to rebut "the indisputable proof" that Nelson's conduct caused the accident. (Doc. No. 53, PageID# 233–34.) But the plaintiff "does not have to eliminate all other possible causes or inferences than that of defendant's negligence" to proceed on a res ipsa loquitur theory. *Morris*, 330 F.3d at 860 (quoting *Provident Life & Accident Ins. Co. v. Prof'l Cleaning Serv., Inc.*, 396 S.W.2d 351, 356 (Tenn. 1965)). "[I]t is enough if the evidence for him makes such negligence more probable than any other cause." *Id*. (quoting *Provident*, 396 S.W.2d at 356). That determination is a question of fact for the jury. *Id* at 860–61 (citations omitted).

Making all inferences in Nelson's favor, the record taken as a whole provides evidence from which a reasonable juror could find that Looper's negligence is the more probable cause of the accident. Nelson testified that he does not know what happened between Looper getting in the vehicle and the collision that caused his injuries. (Doc. No. 36-1, PageID# 112–13.) He also testified that he did not press the accelerator or put his foot on top of Looper's foot "[b]ecause [his] foot was up here on that rise [in the middle of the front of the UTV] and [his] other foot was down on the passenger side" and he "would have no reason to take [his] left foot and push on the gas pedal." (Doc. No. 36-1, PageID# 119, 121.)

Looper testified that Nelson's foot pinned his foot to the accelerator and that he elbowed Nelson away while saying "get off me, man," but did not take his hands off the steering wheel. (Doc. No. 51-1, PageID# 208–11.) Lixfield testified in his deposition that he saw Looper trying to remove Nelson's leg with his right hand, "groping at the leg or pulling at it . . . some sort of motion with his right hand towards the left leg of Mr. Nelson." (Doc. No. 36-2, PageID# 126.) Looper testified that Lixfield told him after the accident he did not see what happened but that Looper's explanation "made sense." (Doc. No. 51-1, PageID# 210.) Looper also testified that Lixfield asked Looper just after the accident why he struck the tree.[3] (Doc. No. 51-1, PageID# 214–15.)

This evidence creates a genuine issue of material fact as to the cause of the accident for the jury to resolve. At summary judgment, the court must resolve all inferences in the non-moving party's favor and may not "weigh the evidence and determine the truth of matter." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 249). It is true that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006) (quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)). But here, all three versions of the event diverge, and a plaintiff's testimony by itself can create a genuine issue of material fact foreclosing summary judgment. *Moran*, 788 F.3d at 205–06. Viewing the facts in the light most favorable to Nelson and drawing all reasonable inferences in his favor,

---

[3] Wilderness argues that the Court should not consider Looper's testimony about what Lixfield said to him just after the accident because it is inadmissible hearsay. (Doc. No. 53, PageID# 230–31.) This determination would rest upon the purpose for which Looper's testimony is introduced. Looper's testimony regarding Lixfield's statement immediately following the accident may also be admissible as an excited utterance. Fed. R. Evid. 803(2). Regardless, a genuine issue of material fact exists even without consideration of these statements.

Nelson has put forward evidence from which a jury could find that he did not interfere with the operation of the UTV, that Looper maintained control of it, and that Looper's negligence therefore caused the accident.

Nor is it dispositive that Nelson does not know exactly what happened to cause the accident. Indeed, res ipsa loquitur is designed to "rescue[] a plaintiff from the predicament of having no evidence of negligence to support his case." *Provident*, 396 S.W.2d at 356. The Sixth Circuit, in the context of a motion for judgment as a matter of law, has reasoned that "it is inappropriate to conclude that res ipsa loquitur does not apply when factual disputes remain as to how the accident occurred and whether the instrumentality was in the defendant's control." *Morris*, 330 F.3d at 862. The *Morris* court found that, when such factual disputes exist, "the application of res ipsa loquitur is a question for the jury to decide." *Id.*; *see also Kelley v. Apria Healthcare, LLC*, __ F. Supp. 3d __, No. 3:13-cv-96, 2017 WL 473882, at *10–11 (E.D. Tenn. Feb. 3, 2017) (denying summary judgment where plaintiff stated a genuine issue of material fact as to one of elements of res ipsa loquitur); *Carrier Corp. v. Piper*, 460 F. Supp. 2d 827, 852 (W.D. Tenn. 2006) (quoting *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005)) (noting that, according to the Tennessee Supreme Court, "[c]ause in fact and proximate cause are ordinarily jury questions, unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree to the proper outcome" (internal quotation marks omitted)).

If these factual disputes are resolved in Nelson's favor, the jury may invoke res ipsa loquitur to find that Looper's negligence was the probable cause of the accident. *See Shivers v. Ramsey*, 937 S.W.2d 945, 948 (Tenn. Ct. App. 1996) (finding "res ipsa . . . particularly suited" to case where "jury was left to infer from the speed, conditions of the roadway, the driver's supposed familiarity with the road and the maxim of res ipsa loquitur, that the defendant was negligent in

failing to reasonably keep his vehicle under proper control"); *Lawing v. Johnson*, 355 S.W.2d 465, 467–68 (Tenn. Ct. App. 1961) (upholding jury's verdict for the plaintiff on the basis of impeachment and circumstantial evidence despite the testimony of the defendant, the only eyewitness, that the plaintiff, not the defendant, was driving the car at the time of the accident). Or Wilderness may rebut any such inference and prove that Looper exercised reasonable care and Nelson's conduct was the accident's cause. *See Kelley*, 2017 WL 473882, at *10. That determination, however, must be left to the jury.

## IV. Conclusion

For the reasons discussed herein, the Motion for Summary Judgment of Defendant Wilderness Hunting Lodge (Doc. No. 34) is DENIED.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge